Judges, counsel, may it please the Court, my name is Josh Swanson. I'm counsel for the Appellants for Rolfsrud Mineral Trust. This morning I want to focus on, given the time I have, two issues. I'm happy to, of course, answer questions for the Court about Alrick and Holbeck and the Void v. Voidable. But I think it's important to look at the District Court's order here. In the nine pages, 20 of the 21 paragraphs focused exclusively on analyzing the Void v. Voidable issue. Understandably, it was an important issue in the case, but there were other issues that were just as important, no matter how the Court ruled on the Void v. Voidable distinction. And those being, did Hans Stoll have the ability to ratify the 1948 county lease? And was the Rolfsrud, or excuse me, the 1954 lease, we don't believe it's a ratification. We believe that the 1948 lease between the county and Durrell and the 1954 ratification between Hans Stoll and Durrell are really two separate leases under the law. And given that, the 1954 ratification cannot hold by production the acreage in Section 35 held by Rolfsrud. The 1948 lease was a 10-year term. The spacing unit with Section 35, so effectively because of the statute, the Void v. Voidable, it divorced the interest. The Court talks about that in Ulrich and in Holbeck, that the owner that's redeeming, they don't have an interest, right, or title. To the property, they had a privilege. What was the privilege of the redeemer, Stoll, Hans Stoll as the predecessor heir to Allie Stoll Jackson? That was strictly limited to Section 35, not the entirety of the county lease. You can't ratify what you don't own. Well, counsel, I don't understand much of this background, but I did learn what a pew clause was. There's no pew clause anywhere in this case, right? There is no pew clause. Does that settle the issue you're mentioning? It does not settle the issue. Why not? I'll tell you why. They're two separate leases, right? So as an example, I think it's for the context in the pew clause, and I'll get into the ratification here. But you have 12 sections, 13 sections in total in the 1948 lease, and just over 1,634 acres. So when Hans Stoll did the ratification, he had no interest in the other 12 sections, and he had no interest in the other 1,500 acres. So his lease there, when you look at the case on ratification and the principal and the agent, the county, when they entered that 1948 lease, they're not acting on behalf of Stoll. Stoll can't act on behalf of the county. Does the 1948 create any rights in Stoll to receive royalties? It doesn't. Does the 1954 ratification create any rights in the county with respect to what Stoll did? It doesn't. They're two separate and distinct leases. Now, the 1954 document is called a ratification, but Stoll can ratify anything, because Ulrich and Holbeck tell us that once the redeemer takes that action, the entirety of the state or what's redeemed goes back, and that county lease is no longer effective as to what is being redeemed. So here comes the Pew Clause part. Oil and gas lease is indivisible. So you see that in Continental v. Edwin, 2000 ND 169. You see that in the Tank v. Citation case. If the lease is indivisible, which is where we get into the Pew Clause discussion, how do you divide that with the 1954 ratification? If that lease is indivisible, why would it need to be ratified at all? If everything is subject to the 1954 lease, leases are generally indivisible, but we're not talking about the same parties here with the same rights. The rights of Stoll are separate and distinct from the county, and the rights of county are separate and distinct as to Stoll. And if we carried this out to its logical conclusion, I think it shows what the problem is with treating the 1954 county lease and the 1954 ratification as being one and the same in the same lease. Now we know from the Statoil v. Powell case and a litany of other cases from the North Dakota Supreme Court that the essence of an oil and gas lease is getting paid royalties. We also know that from 4716.39.1 and 4716.39.4. Now let's assume that the 80 acres, Stoll had 80 acres that were subject to that 1954 ratification in a single section, Section 35. Let's assume there's production on that. There wasn't. There wasn't production until 2022. We included the NDIC records in the appendix, and they were before the district court. But let's just assume there's only production in Section 35. So those 1,500 other acres that are part of the 1948 county lease, 1,500 other acres in 12 sections, let's assume that there's no production on any of those. Okay. So we have production on Section 35 in the 1954 instrument. We have no production in the 1948 county lease under this example with 1,500 acres. If what Your Honor is asking is true and the leases are indivisible and there's no pew clause, then under this hypothetical, the production in Section 35 in the 1954 ratification would hold the entirety of those 12 other sections in 1,500 acres leased by the county in 1948 because there's no pew clause and the lease is indivisible. That doesn't make any sense. Why? Because the county can't act on behalf of Stoll. Stoll can't act on behalf of the county. And if the court says that it is indivisible, then under that situation, the production on Section 35 in the 1954 document, the street has to run both ways. The 1954 document has to have an impact on what the 1948 document does if the 1948 document is being ratified by the 1954 document. Well, you're leaving out the 1951 repurchase, right? I don't think we've mentioned that, have you? Yeah. I haven't yet. It's one of the key facts. There are several key facts here. Doesn't it apply to your logic and that is one of the original sons repurchasing the property in 1951 before this 1954 ratification? That's a repurchase that's allowed by statute in North Dakota. Correct. Okay. Doesn't that affect what you're saying? It does, and it actually ties into what I'm saying because that 1951 redemption, it wasn't for all of the property in the 1954 lease. It was limited to that Section 35. If you take a look at the 1954, what's purported to be a ratification, what does it say in several places? That it's strictly limited insofar as Stoll's interest in Section 35. Why? Because what he was redeeming under the statutes, it wasn't those 12 other sections in McKenzie County that were in the 1948 lease. It was that one singular section. And what do we know from Holbeck and Ulrich? That that act of redeeming, it effectively divorces what's being redeemed from what the county did. So with respect to that Section 35, the county no longer had any right to it, and this isn't a Holbeck situation where someone else is trying to claim through the shoes of Stoll. It is a direct descendant. So that 1951 redemption, it doesn't defeat the argument. It bolsters it because that redemption is limited to Section 35 and not the rest of the county lease in 1948. Back to where I started from, the void, voidable. And these are all, I think that this case candidly focuses on the ratification issue and the held by production issue. With Ulrich, there's language to him that says void, but I think Holbeck, what Judge Traynor did with the voidable, I think admittedly that that was probably right. I think he interpreted that right. I think there is an argument if you're reading Ulrich in isolation because of the use of the term void in the last paragraph. But when you read it in conjunction with Ulrich, I think I don't want to spend any time there because what's important for this Court and for appellate review is a ratification held by production. And there's no analysis of that. I believe it's in paragraph 20 on the eighth page of it. What the district court did was say because we're finding it was voidable and not void, it didn't get into any analysis of how that ratification could or could not affect the 1954 lease and how that ties in to how the 1954 lease plays in to what the Welsh Roots did with the lease with Continental. And I think that's further indicative. I know I'm into my rebuttal time here, but I think this is important. If the Continental, Rolfsford's lease with Continental was a top lease, it doesn't say anything in the lease that in 2007 that Rolfsford entered with Continental. Nowhere does it say is this a top lease. Continental is a very sophisticated oil and gas company. They've got an army of lawyers. They have an army of title lawyers. If they had thought that the 1948 lease held that acreage in 1935, that's fine if they were to enter a top lease. Does it matter that it's not called that if it's in the right configuration? I think it very much matters that it's not called that. I think in isolation are there certain fact scenarios where it doesn't say a top lease but it could be a top lease? I think that's problematic because the cases from the North Dakota courts say that the top lease does a certain thing. It takes effect after the underlying lease expires. How do the parties know it's a top lease if it doesn't say that? There's nothing in the record indicating that Continental treated it as a top lease, but what is in the record in 2009 when they did the extension of the lease, it says that extension would have expired if there was not production by January 2010. It would make no sense to put that language in the extension if it were a top lease. If it's a top lease, it only takes effect if the underlying lease expires. If it's not a top lease, Continental, the language in the 2009 extension with Robsters and Continental, the fact it says that this lease will expire if there's a lack of production. You can't have both things. You can't have a top lease dependent on an underlying lease and then say in the same breath that the extension is going to expire. The lease would already be held by production from the 1948 lease. I think, Judge, that's the answer to that question. I think it's certainly helpful, but there's no indication in the record at all that it was a top lease other than Continental saying it's a top lease after the fact. The lease is entirely silent. It doesn't say that in the actions of Continental, the fact that it was not a top lease. I will reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Swanson. Mr. Phillips. May it please the Court, I'm David Phillips, and I'm representing Petro Hunt today. This appeal turns on three, I think, kind of straightforward issues, and the district court got it right, got the issues right and got the analysis right. Now, first, one thing the district court didn't get into, but I do want to mention today, is that there is no evidence in this case that the county failed to give notice when it issued the county lease in 1948. Who's responsible for producing proof of that? I believe the – so in this case, we have a lease that's 78 years old. It's been, in effect, held by production on various lands for all of that time. It's my position that the one challenging that lease should have to bring forward the evidence showing that that lease is voidable or void. The – it should be pointed out that back in the 1950s, Hans Stoll, the one who redeemed the property and went ahead and ratified the lease, he was entitled to delay rentals back in the 50s. These are payments that are made under the lease until production starts. I assume by your answer, there's no case that gives us the answer, or is there? Well, the cases that we've cited, Your Honor, would be Zavana v. Gattaco, which is 2023 ND 142, and Sorem v. Schwartz, 411 NW 2nd 652. Your Honor, these cases stand for the proposition that a party who's seeking to terminate a contract bears the burden of proving that that contract should be terminated. So it's a general principle and not one specific to cases like this?  Correct, Your Honor. Those cases aren't specific to this somewhat unique fact pattern. But the party who's attacking the document is the party who should have the burden of proof. Additionally, that Sorem case mentions that oil and gas leases being forfeited is not something that's preferred by the Court and should be avoided. Again, this is a lease that's been in existence for coming up on longer than human memory, has been in effect that whole time, and that the parties have gotten advantage of over the time. Somebody challenging that should have to prove that that document is subject to challenge. Even if there had been a notice defect in this case, the second issue that the district court addressed and got right was that that defect would make the lease voidable, not void automatically. And in this case, Hans Stoll elected to ratify that lease. Okay. You've got to ratification. I see in the facts of the district court's opinion it mentions ratification, but not of any of the law section. So I don't believe the district, did the district court not make a finding on the issue that was raised by your opponent? Your Honor, the issue that's been raised and focused on by my opponent today is fairly convoluted. The ratification says ratification on it. It says in the ratification documents, Your Honor, that the county lease should have the same force and effect as if he, being Hans Stoll, had been named as lessor and had duly executed said lease. That is a ratification. My opponent is trying to turn that into some sort of a separate lease. I don't frankly understand that argument. The document is explicitly a ratification. It says it's a ratification. That's what it's titled. The terms of it indicate that it's a ratification. I'm not sure a finding is necessary on that. But was this issue raised to the district court? I believe the issue was raised in the district court. Again, I want to point out it's a fairly convoluted argument, and I'm not 100 percent sure I understand it. The facts are simple, that we have a lease in 1948 and a ratification in the 1950s. The fact that the ratification ratified the lease that it references is fairly obvious on the face of the documents. I want to be clear that the district court didn't actually make a finding on the burden of proof when it comes to the notice defect. The district court actually found, well, it doesn't matter because the lease was voidable, and in this case it was ratified. So the district court punted on the issue of whether there needed to be evidence produced by the plaintiff. Nevertheless, that is a reason that this court could affirm the decision in a de novo review. There's no evidence that the lease was ever void or voidable in the first place. And if that's the case, then there's no further analysis. It's just simply a standard oil and gas lease where there's been production since prior to the expiration of the primary term. And in this case, again, there's no affidavit, there's no testimony, no documents, nothing at all talking about notice. It's just assumed by the plaintiff that the county failed to give notice when it issued the 1948 lease. Now, my opponent seems to have conceded during oral argument that the district court got the analysis correct with respect to the Ulrich and the Holbeck case and its analysis. And, again, I think all of them are correct. The Ulrich case says that on redemption, leases that aren't properly noticed are voidable. Now, in the conclusion, the court concludes that it's made void. Now, the district court, I think, did a good job of reconciling this, saying in that case, the lease was voidable on repurchase and there was no redemption or other indication from that repurchaser that they were exercising their right to maintain the lease going forward. It became void. In this case, we have the opposite. In this case, Hans Stoll repurchased the property and he signed a document that said, I hereby sign that lease or I want that lease to be treated as if I had signed it from the beginning. The lease was voidable and the person who had the right to exercise the right to void it chose to do the opposite. The plaintiff in this case, the Rolfsrud Trust, is asking this court to find that if the repurchaser takes the step of repurchasing the property, they've been stripped of their right to make a decision about what to do with that lease going forward. That might make sense if the lease was void from the beginning or void because of public policy or something along those lines. That's not the case. This wasn't a void lease that never had effect in the first place that a person is unable by law to ratify. This is the type of lease that was voidable. And in this case, the person who had the right to void the lease chose not to do so. They did the exact opposite. The Rolfsrud Trust argues that it matters that the ratification in this case was limited insofar as it covers the Rolfsrud property. That is just simply a misinterpretation of applicable law and how these are. What's your take on ULRIC and the language in it about the lease becoming void? I'm sorry, Your Honor. The ULRIC case? Yes. Would you address its application? Fair enough. The ULRIC, I don't know if it directly addresses the issue of acres being covered by the ratification. In this case, the ratification explicitly limits itself to the acres being ratified. But that makes sense. The only acres on this lease that needed to be ratified in order to hold this lease was the property that was redeemed. The county lease covered a whole bunch of lands, some of which was repurchased by Hans Stoll. Out of all of those lands, the only portion of that lease that needed to be ratified was the acreage that was repurchased by Hans Stoll. Had he not done so, the Court might be able to presume today, as the ULRIC Court did, that it was voided on the repurchase. But that's not what happened. Hans Stoll explicitly redeemed these acres. Now, again, there's no reason to treat that ratification as a new lease or as something that modifies the terms of the 1948 lease. Nothing in that Stoll ratification changes the terms of the lease or the acreage, particularly it doesn't change the basic term of an oil and gas lease, which is that in the absence of a pew clause, if there is production on any acreage covered by that lease, the lease is held by production beyond the primary term. Could the ratification have included a pew clause? I think that the ratification could have included a pew clause, except that it probably would have had to have been signed additionally by the other party to the lease. In this case, neither of those things happened. And I am running up on the end of my time. I'm going to yield to my colleague representing Continental Resources, Petro Hunt, request that the district court decision be affirmed. Thank you. Thank you, Mr. Phillips. Thank you. Spencer Potasik, appearing on behalf of Continental Resources. The district court's judgment should be affirmed for the reasons just discussed by Petro Hunt's counsel, but if the court were to disagree with Petro Hunt on the title issues that have been discussed this morning, the district court's dismissal of claims by the Rolfe's Roots against Continental should still be affirmed because those claims fail as a matter of law for reasons independent of the title dispute at the heart of this case. First, the Rolfe's Roots asserted claim against Continental for interest on royalties under North Dakota Century Code Section 47-1639.1. However, that statute provides a safe harbor provision indicating that it's inapplicable in the event of a title dispute existing that affects the distribution of royalty payments. These proceedings themselves are evidence of the fact that there is a title dispute in this case that would render that statute inapplicable. The Rolfe's Roots attempt to block Continental's reliance on the safe harbor provision by citing to the Powell decision, and in the Powell decision, the North Dakota Supreme Court recognized that in certain cases, notice of the underlying title dispute is required in order for an operator to invoke the safe harbor provision. That case is inapplicable to this one, however, because the notice requirement that was recognized in that case was limited to cases in which the title dispute is between the well operator and a mineral owner. In that case, Stadler was the well operator, and June Slagle, whose estate brought the case, was the mineral owner. Here we have a dispute between two or more non-operators. We have the mineral owners, the Rolfe's Roots, the trust, and then we have their lessee or lessee's Davis Exploration, Petro Hunt. Continental doesn't claim any interest in this property. Continental is not the Rolfe's Roots lessee. Therefore, by its own terms, the Powell decision doesn't apply to this case, and therefore the safe harbor provision in Section 39.1 defeats the Rolfe's Roots claim for interest. The district court did not rule in detail on that, right? Correct. The district court's order on summary judgment doesn't address Section 39.1. Effectively, the court concluded that because it decided the title issues against the Rolfe's Roots, their claims against Continental failed as well. The Rolfe's Roots also assert a claim for breach of contract against Continental. That's a claim for breach of the Rolfe's Roots lease, the lease that they're claiming is effective. That claim fails for the simple reason that Continental is not a party to that lease. It's black letter law in North Dakota and elsewhere that a party or a person that's not party to a contract can't breach that contract. The district court did rule on that in an earlier order on our first summary judgment motion, at which point that contract claim was dismissed. The Rolfe's Roots also assert claims against Continental for quiet title and for declaratory judgment. Both of those claims fail as a matter of law for similar reasons. Essentially, Continental has no adverse interest in the property that's claimed by the Rolfe's Roots. There's no claim to the minerals, there's no claim to an interest in the leases. Continental is effectively, at least as to this acreage, a passive distributor of revenue from production. So because there's no actual and substantial controversy, the declaratory judgment claim fails, and because there's no adverse claim, the quiet title claim fails. Finally, the Rolfe's Roots assert a claim for accounting. That claim fails for a number of reasons, but perhaps the most significant would be that a claim like this for an equitable accounting fails in the absence of a, or can only proceed in the absence of a legal remedy. The Rolfe's Roots do have a statutory right to an accounting from their lessee, not from Continental. So because the law gives them that right, their claim for an equitable accounting necessarily fails. And if the Court doesn't have any further questions, that's all I have. Thank you. Your rebuttal, Mr. Swanson. All right, to start with what counsel for Continental just said, Gearty Bach and Verso Leases, 2018 ND180, Continental needs to be a part of this. Olson v. Swartz, 345 Northwest 2D33, talks about the duties and obligations that an operator owes to a royalty owner when there is a lease in place. So it is 47, 16, 39.1, and 39.4. But as Judge Bendis pointed out numerous times, what's problematic here is that we have no analysis from the district court on a plethora of these issues. With respect to the ratification, the Meyer v. Novak case — Well, on that, on the last issue, the judge does say there's no need to rule on it. So he does address that one. Well, there's — he says there's no need to rule on it. But when we talk about the void and voidable in ratification, Meyer v. Novak, 338 Northwest 2D631, North Dakota, 1983, a ratification is not valid unless at the time of ratifying, the act done, the principal has power to confer authority for such an act and ratification of part of an indivisible transaction as a ratification of the whole. We don't have that here. The affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account, that's Meyer v. Novak. Nothing the county did was done on Stowell's account. The case you just talked about is not in your briefs, right? It's not. There's a — it's not in our brief. Okay. Would you send a 28J letter to us under Federal Appellate Procedures 38 — 28J with that case? Absolutely. And the other cases you've talked about, are they in your briefs? They are. Well, every case I talked about in the open is in the brief. The case I'm about to talk about, Gustafson v. Green is in the brief. Also, J.B. Swartz is not in the appellate briefing, though, but I figured Continental would raise the issue during argument, so I was prepared with it. I think to finish on ratification, Gustafson v. Green, you talk about convoluted. Look at the equities and facts of what's going on there. You have the Gustafsons who buy this from an estate. There's tax issues involved in it. It was a tax foreclosure. The home was not livable. They put a ton of money into fixing it up. They'd been living there for over a decade. So then you have this heir named Jack who comes into the picture and says, my estate for Marvin or whoever it was, my other relatives, could not ratify this sale. Couldn't do it. And the district court says that Jack has rights. Why? Because his heirs couldn't ratify what they did not own. That case, the facts there, when you look at it in comparison to this, there's no notice issue there. So even if the court says, look, on the notice issue, it was appellant's burden, in that case, okay, set aside the notice issue and take a look at what the court said in Gustafson v. Green and found that you can't ratify what you don't have an interest in, stolen have an interest in all of it. And with respect, in summation, I want to thank the court for its time on the notice question. When you take a look whose burden on it is noticed, take a look at what Alrich says. All the farm foreclosures that were going on between 1930 and 1940 in North Dakota, the legislature passed the 91 tax acts, and they talk about a gift of grace. And when it's that sort of situation and the county has to go through all those steps, who does it make sense that I have the burden to have that notice? Probably the party that was claiming that everything was done procedurally correct, whereby they're claiming an interest in the property. So is there a case on it? No, but you take a look at Alrich. I think that's instructive where the burden. So you concede, as the other side argues, that there is no evidence of the absence of notice? There is. There's nothing in the record on it, but it's addressed in the brief that the plaintiffs to prove a negative. If it doesn't exist, how can they find it? Well, you can't prove the negative, but there could be something, perhaps, if there was, something to indicate that notice was never given, that there was some opportunity for someone responsible to give it, and there's some record indicating that didn't happen. Sure. Well, and there's nothing in the record by through which the appellees are claiming they're claiming it through the county lease. If there would have been a notice, I presume they would have produced it and put it with an affidavit saying, here's this notice, we're totally compliant, but they didn't, because I think it's on their burden. But even if the court finds that the burden was on the appellants here to produce that notice, we still have serious issues on ratification. The ratification issue isn't removed, even if the court says that the notice issue was the appellant's burden to prove that. Thank you. Thank you, Mr. Swanson. The court wishes to thank all counsel for your participation in argument before the court this morning. We'll continue to study the materials and render decision in due course. Thank you. Counsel may be excused.